J. W. HUGHES v. SUMMIT REALTY CO., INC., and ADAMS PACKING CO., INC.

162 So. 343.
Division B.
Opinion Filed June 19, 1935.
Rehearing Denied July 8, 1935.

*Gordon C. Huie* and *Maxwell & Cobbey,* for Appellant; *A. Summerlin,* for Appellees.

TERRELL, J.—In May, 1933, appellant filed his bill of complaint against appellees to foreclose a purchase money mortgage on described lands on part of which a bearing orange grove was located. The bill alleges that appellee, Summit Realty Company, was the owner of the fee in the lands and that appellee, Adams Packing Company, Inc.,

claimed some right or interest therein, the exact nature of which was unknown to complainant.

In June, 1933, Adams Packing Company, Inc., filed its answer to the bill of complaint in which it alleged that it was the owner of three crop liens dated August 17, 1931, June 7, 1932, and March 29, 1933, respectively, that said crop liens described the lands sought to be foreclosed, encumbered the citrus crops on said lands for the years 1931, 1932, 1933, and 1934, and for subsequent years and crops until the debt secured by them was paid. The answer also alleges that Adams Packing Company, Inc., had advanced to Summit Realty Company the sum of $34,806.46, which was secured by said crop liens, that $15,699.18 of said sum was still due, and that said liens were superior in dignity to the mortgage of complainant on the crop of citrus fruits then on the trees.

Summit Realty Company entered a formal answer to the bill of complaint neither admitting nor denying the material allegations thereof.

In July, 1933, complainant filed his motion to strike the answer of Adams Packing Company, Inc., on the ground that it tendered no defense to the bill of complaint, that the alleged crop liens were in terms made subject to complainant's mortgage, and that the said liens being executory and for an indefinite period created no lien on the fruit crop *in esse*. The motion to strike said answer was denied, testimony was taken, and on final hearing a decree of foreclosure was entered in favor of complainant and Adams Packing Company, Inc., was adjudicated to hold a superior lien on the 1933-1934 fruit crop, being the one involved in this suit. Other matters were incorporated in the final decree not material here. From that decree this appeal was prosecuted.

In this state of facts we envisage the following question: Is a lien on a crop of citrus fruits in being and on succeeding crops until the debt secured thereby is paid good as to the latter when executed?

The purchase money mortgage from Summit Realty Company to appellant was executed April 10, 1931, and this suit to foreclose was instituted May 16, 1933, soon after the second of a series of ten notes given to evidence deferred payments matured. The citrus crop in controversy was well advanced to maturity. The crop lien from Summit Realty Company to Adams Packing Company, Inc., was executed June 7, 1932, long before default in payment of the second note and while the citrus crop encumbered by it was in being.

A decision of the question in issue involves the application of the opinion of this Court in Summerlin v. Orange Shores, Inc., et al., 97 Fla. 996, 122 So. 508, to Sections 5741 and 5742, Compiled General Laws of 1927, being originally Chapter 10279, Acts of 1925, as follows:

"5741. Valid mortgage liens may be created upon agricultural, horticultural, or fruit crops, then planted, growing, or to be thereafter planted, grown, or raised; provided, that the land upon which said crops are grown or raised, or are to be thereafter grown or raised, is fully described in said mortgage."

5742. In order to be valid, however, against subsequent encumbrances, or subsequent purchasers, in good faith, all such mortgages shall be executed, acknowledged, and recorded, as is now, or may be hereafter provided by law, upon mortgages upon real estate."

In Summerlin v. Orange Shores, Inc., we held that in view of the statute so quoted before default in the payment of the debt secured by the purchase money mortgage the

owner of the fee may give a chattel mortgage upon the fruit *in esse* and on default in payment of said mortgage the mortgagee may take possession of the fruit under provisions in the chattel or crop mortgage, but that the owner of the fee cannot create a lien superior to the purchase money mortgage upon the land by attempting to mortgage fruit not yet in existence and which does not come into existence until after default in the purchase money mortgage and proceedings to foreclose it.

In Summerlin v. Orange Shores, Inc., we were treating a purchase money mortgage on the real estate which was executed before the enactment of Chapter 10279, Acts of 1925, providing for crop liens, while in the instant case we are concerned with a purchase money mortgage and a crop lien, both of which were executed after the enactment of Chapter 10279.

The effect of Chapter 10279, Acts of 1925, was to segregate agricultural, horticultural, and fruit crops from the land on which they are grown for mortgage purposes, to set them apart as a distinct class of personalty, and if executed under the formality required by said Act they are valid and binding against subsequent encumbrances or subsequent purchaser. The mortgage involved here met all the requirements of the statute and was ample for the purpose for which it was made. Tippins v. Belle Mead Dev. Corp., *et al.*, 112 Fla. 372, 150 So. 719.

The state of the law when the purchase money mortgage treated in Summerlin v. Orange Shores, Inc., was executed was quite different from that in effect at the time the purchase money mortgage involved here was executed. In the former case liens could be acquired on growing crops pursuant to Section 3515, Revised General Statutes of 1920, Section 5376, Compiled General Laws of 1927, but they

enjoyed no such status as those acquired under Chapter 10279, Acts of 1925.

When the purchase money mortgage involved in Summerlin v. Orange Shores, Inc., was executed the mortgagee had reason to look to the fruit crop to help fund his mortgage and such right was preserved in that case, but since the enactment of Chapter 10279, Acts of 1925, a mortgagee has no reason to rely on the citrus crops to pay his mortgage unless he so specifies in the mortgage.

But the appellant contends that the holder of a mortgage on farm, grove, or orchard lands acquires as an incident to his mortgage the right to sell the land as well as the growing crops thereon which have not matured and been severed therefrom and that such right is superior to that of the holder of a subsequently acquired crop lien. Appellant further contends that the chattel mortgage or crop lien under review is in fact no lien at all, but merely a contract to market the fruit through the mortgagee, giving it no right as lien holder to the fruit.

Both these contentions we have answered contrary to appellant's view. There may have been some basis for the former contention prior to the passage of Chapter 10279, Acts of 1925, but certainly there is no basis for it now. The following cases while not in point support this view: Gentile Bros., Inc., v. Bryan, 101 Fla. 233, 133 So. 630; Bryan, *et al.,* v. Gentile Bros., *et al.,* 106 Fla. 900, 143 Sou. 760; Plant City Agri. Credit Co. v. Pool, *et al.,* 103 Fla. 806, 139 So. 595; Haines City Citrus Growers v. Petteway, 107 Fla. 344, 145 So. 183; L. Maxcy, Inc., v. James, 117 Fla. 641, 158 So. 164.

The right to encumber a citrus crop is a very important one. It is very expensive to grow and market. Labor, fertilization, protection from the vicissitudes of seasons,

and the attacks of insects often incur heavy and unforeseen expenditures that the owner would be powerless to control if he could not place a lien on his crop. Gentile Bros., Inc., v. Bryan, 101 Fla. 233, 133 So. 630.

The holder of the fee can, therefore, mortgage his crop at will so long as he complies with Chapter 10279, Acts of 1925. In the case at bar none of the notes of the mortgagee were in default when the crop lien was executed and the fruit was well on the road to maturity. In this state of the record appellee was within his right in mortgaging his crop for the year and until his note was fully paid. The amount of the note and the sum paid on it each year being ample to fix bounds to the mortgage.

The decree below is accordingly affirmed.

Affirmed.

ELLIS, P. J., and BUFORD, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.